IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MICHELLE SHAFER, an individual, | No. 3:23-cv-01543-HZ |
| Plaintiff, | OPINION & ORDER |
| v. | |
| LEGACY HEALTH, a public benefit corporation, | |
| Defendant. | |

Ray D. Hacke
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Suite 202
Salem, OR 97301

  Attorney for Plaintiff

Brenda K. Baumgart
Melissa J. Healy
Dominik Mackinnon
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205

  Attorneys for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Michelle Shafer brings this religious discrimination case against her former employer, Defendant Legacy Health. Plaintiff alleges that Defendant violated Title VII of the Civil Rights Act and Or. Rev. Stat. § ("ORS") 659A.030(1)(a) when she was terminated after refusing to receive a COVID-19 vaccine due to her religious beliefs. Compl., ECF 1. Defendant moves to dismiss this case under Rule 12(b)(6), arguing that Plaintiff failed to sufficiently inform Defendant of a conflict between its COVID-19 vaccination requirement and a bona fide religious belief. For the reasons that follow, the Court denies Defendant's motion.

## BACKGROUND

In August 2021, Oregon issued a vaccine mandate requiring most healthcare workers to be vaccinated against COVID-19. Compl. ¶ 10. The mandate allowed healthcare workers to seek exceptions from the vaccine requirements. Compl. ¶ 10. Consistent with this mandate, Defendant required its employees to be vaccinated against COVID-19 by September 30, 2021. Compl. ¶ 13. But it also allowed employees to request an exception to the vaccination requirement due to medical or religious reasons. Compl. ¶ 13. Employees submitted religious exception requests by completing a form explaining how getting the vaccine conflicted with their religious beliefs. Compl. ¶ 13. These requests were then evaluated by an "exception working group." Compl. ¶ 14.

Plaintiff was employed by Defendant as a pediatric advice line nurse, taking after-hours calls for Defendant's pediatric providers and providing advice to parents of Defendant's patients. Compl. ¶ 16. Plaintiff worked entirely remotely in this position for several years up until the time she was terminated in the fall of 2021. Compl. ¶ 17. Plaintiff submitted a vaccine exception request in August 2021, "cit[ing] her religious objections to abortion and COVID-19 vaccines' connections to abortion as the primary reason why she was unable to receive COVID-19

vaccines." Compl. ¶ 21; *see also* Compl. ¶ 15 (citing documents from Defendant explaining how the vaccines used fetal cell lines in their development). Specifically, Plaintiff wrote the following in her request to Defendant:

> Per your request, attached please find a letter from my religious authority from my faith community, on explaining how administration of the COVID-19 vaccine conflicts with the bona fide religious tenets of my Catholic faith. I am a practicing Catholic.
>
> Per the faith of my church, vaccination is not morally obligatory in principle and so must be voluntary. Furthermore, there is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cells lines derived from direct abortions. It is permissible to use such vaccines only under certain case-specific conditions, based on a judgment of conscience.
>
> A Catholic's informed judgments about the proportionality of medical interventions are to be respected. Catholic doctrine teaches that a person is morally required to obey his or her sure conscience. A Catholic may judge it wrong to receive certain vaccines for a variety of reasons consistent with these teachings, and there is no authoritative Church teaching universally obliging Catholics to receive any vaccine. An individual Catholic may invoke Church teaching to refuse a vaccine developed or produced using abortion-derived cell lines. More generally, a Catholic might refuse a vaccine based on the Church's teachings concerning therapeutic proportionality. Therapeutic proportionality is an assessment of whether the benefits of a medical intervention outweigh the undesirable side-effects and burdens in light of the integral good of the person, including spiritual, psychological, and bodily goods. It can also extend to the good of others and the common good, which likewise entail spiritual and moral dimensions and are not reducible to public health. The judgment of therapeutic proportionality must be made by the person who is the potential recipient of the intervention in the concrete circumstances, not by public health authorities or by other individuals, including employers, who might judge differently in their own situations or faith traditions.
>
> At the core of the Church's teaching are the first and last points listed above: vaccination is not a universal obligation and a person must obey the judgment of his or her own informed and certain conscience. In fact, the Catechism of the Catholic Church instructs that following one's conscience is following Christ Himself:
>
> In all he or she says and does, a person is obliged to follow faithfully what he or she knows to be just and right. It is by the judgment of his or her conscience that a person perceives and recognizes the prescriptions of the divine law: "Conscience is a law of the mind; yet [Christians] would not grant that it is nothing more; . . . [Conscience] is a messenger of him, who, both in nature and in grace, speaks to us

3 – OPINION & ORDER

> behind a veil, and teaches and rules us by his representatives. Conscience is the aboriginal Vicar of Christ."
>
> If a Catholic comes to an informed and sure judgment in conscience that he or she should not receive a vaccine, then the Catholic Church requires that the person follow this certain judgment of conscience and refuse the vaccine. The Catechism is clear: "Man has the right to act in conscience and in freedom so as personally to make moral decisions. 'He must not be forced to act contrary to his conscience. Nor must he be prevented from acting according to his conscience, especially in religious matters.'" To be forced to do so would be discrimination and harassment, especially on the part of an employer.
>
> Please confirm your receipt of my exemption at your earliest convenience, and please do not hesitate to reach out with any questions. Thank you.

Compl. Ex. C. Defendant denied Plaintiff's request for "lack of consistency" and "lack of specificity." Compl. ¶ 23, Ex. D.

After denying her request, Defendant gave Plaintiff three options for moving forward: (1) receive a vaccine; (2) be placed on unpaid administrative leave as of October 2, 2021, with termination on October 19, 2021; or (3) resign. Compl. ¶ 31. Plaintiff chose to be placed on leave and was terminated on October 19, 2021. Compl. ¶¶ 32–33.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

## DISCUSSION

To establish religious discrimination under Title VII based on a failure to accommodate theory, a plaintiff must plead that: (1) she had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) she informed her employer of the belief and conflict; and (3) the employer discharged her because of her inability to fulfill the job requirement. *Peterson v. Hewlett–Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004). Plaintiff's state-law claims are analyzed the same way. *See Pullom v. U.S. Bakery*, 477 F. Supp. 2d 1093, 1100 (D. Or. 2007) ("Because O.R.S. 659A.030 is modeled after Title VII, plaintiff's state law discrimination claim can be analyzed together with her federal discrimination claim.") (citing *Heller v. EBB Auto Co.,* 8 F.3d 1433, 1437 n.2 (9th Cir. 1993) and *Winnett v. City of Portland,* 118 Or. App. 437, 847 P.2d 902, 905 (1993)).

Defendant moves to dismiss Plaintiff's claims, arguing that Plaintiff's exemption request "failed to inform [Defendant] of a bona fide religious belief that conflicted with [Defendant's] COVID-19 vaccination requirement." Def. Mot. Dismiss 5–6, ECF 10. In other words, it appears

Defendant is arguing Plaintiff cannot meet the second requirement of her prima facia case: that she informed her employer of the belief and conflict. *Id.* at 7. Defendant contends that Plaintiff's allegations regarding "abortion-derived cells," general moral duties, and one's conscious are insufficient to state a claim. *Id.* at 8.

The Court disagrees. When read in context of the entire letter and viewed in the light most favorable to Plaintiff, Plaintiff's exception request adequately informed Defendant of a religious belief that conflicts with Defendant's vaccination requirement.

"A religious belief need not be consistent or rational to be protected under Title VII, and an assertion of a sincere religious belief is generally accepted." *Keene v. City & Cnty. of San Francisco*, No. 22-16567, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023) (citing *Thomas v. Rev. Bd.*, 450 U.S. 707, 714 (1981)). Indeed, the court may not "question the legitimacy of [an individual's] religious beliefs regarding COVID-19 vaccinations." *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1176 n.3 (9th Cir. 2021) (citing *Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*, 584 U.S. 617, 639 (2018)). While the burden to allege a conflict between religious beliefs and an employment duty is "minimal," courts need not "take plaintiffs' conclusory assertions of violations of their religious beliefs at face value." *Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023). In addition, the court must distinguish between conflicts that are "rooted in religious belief" as opposed to ones based on "'purely secular' philosophical concerns." *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)).

Judges in this district have concluded that "invocation of an anti-abortion stance, guidance from spiritual leaders, and the use of fetal cells in developing COVID-19 vaccines appropriately alleged a bona fide religious belief." *Denton v. Shriners Hosp. for Child.*, No. 3:23-

CV-00826-JR, 2024 WL 1078280, at *3 (D. Or. Feb. 8, 2024), *report and recommendation adopted*, No. 3:23-CV-826-JR, 2024 WL 1075324 (D. Or. Mar. 12, 2024). In *Kather v. Asante Health Systems*, for example, the district court concluded that one plaintiff's "self-identified 'Christianity' and resistance to receiving a vaccine developed with fetal cell lines is [a] reasonably inferred religious conflict." 1:22-cv-01842-MC, 2023 WL 4865533, *4 (D. Or. July 28, 2023). Similarly, it concluded that another plaintiff's "opposition to injecting into his body anything that 'originates from fetal cell lines'" was sufficient for the Court to infer that his belief in God informed his opposition to receiving a vaccine. *Id.*; *see also Rolovich v. Wash. State Univ.*, No. 2:22-cv-0319-TOR, 2023 WL 3733894, at *3 (E.D. Wash. May 30, 2023) (finding the plaintiff's allegations that "he is a practicing Catholic and his 'study of the Bible, personal prayer, . . . advice from a Catholic priest, and the teachings of the Church . . . precluded him from receiving any available COVID-19 vaccine'").

      Here, like two of the plaintiffs in *Kather*, Plaintiff's letter adequately alleges a sincerely held religious belief that conflicts with receiving the COVID-19 vaccine. Defendant picks apart Plaintiff's request, emphasizing specific subparts that do not, in isolation, articulate a bona fide religious conflict. Def. Mot. Dismiss 8–14 (arguing Plaintiff's reference to a "general moral duty," following her conscience, and therapeutic proportionality are not sufficient to state a claim). But when viewed in the light most favorable to Plaintiff, the letter has "enough information about [Plaintiff's] religious needs to permit [Defendant] to understand the existence of a conflict between the employee's religious practices and the employer's job requirements." *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1439 (9th Cir. 1993). At the outset, Plaintiff's exception request explains that administration of the vaccine conflicts with the tenants of her Catholic

7 – OPINION & ORDER

faith.[1] Compl. Ex. C. She goes on to explain that there is a moral duty to refuse the use of vaccines "that are produced using human cell lines derived from direct abortions." *Id*. She further elaborates that "[a]n individual Catholic may invoke Church teaching to refuse a vaccine developed or produced using abortion-derived cell lines." *Id.* Plaintiff's additional references to following her conscience, therapeutic proportionality, and moral duty do not change this analysis. *See Kather*, 2023 WL 4865533, at *3 ("[O]verlapping secular and religious objections do not place a requested accommodation outside the scope of Title VII."). In sum, the Court can reasonably conclude from Plaintiff's exception request that Plaintiff informed Defendant that her Catholic faith and associated anti-abortion beliefs conflict with Defendant's vaccine mandate.

## CONCLUSION

The Court DENIES Defendant's Motion to Dismiss [10].

IT IS SO ORDERED.

DATED:_____May 2, 2024_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge

---

[1] The parties do not dispute that the exception request—which is attached to the Complaint—is properly incorporated by reference. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (holding a document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim").